454 F.Supp. 758 (1978)
ASSOCIATION AGAINST DISCRIMINATION IN EMPLOYMENT, INC., Roosevelt Johnson, Craig Kelly, Charles Herd, Robert Lewis, William Cary, Charles R. Young, Herman Agosto, Harmin Linares, Ismael Pomales, Salvador Perez, Individually and on behalf of all others similarly situated, Plaintiffs,
v.
Robert W. WEEKS, Jr., Edward F. Daly, Julius Nobile, William G. Pjura, Frank J. Prinzio, Bridgeport Civil Service Commission, Alan Cohen, Charles E. Porvelt, Andrew Gottfried, Salvatore S. Spudaccino, Charles J. Dougiello, John J. Hannon, Bridgeport Board of Fire Commissioners, John F. Gleason, John Mandanici, and City of Bridgeport, all Individually and in their official capacities, Defendants.
Civ. A. No. B-75-268.
United States District Court, D. Connecticut.
July 31, 1978.
Addendum To Remedy Order September 18, 1978.
*759 David N. Rosen, New Haven, Conn., Michael P. Koskoff, Bridgeport, Conn., for plaintiffs.
J. Daniel Sagarin, Bridgeport, Conn., for intervenors.
Raymond B. Rubens, Bridgeport, Conn., for defendants.

REMEDY ORDER
DALY, District Judge.
In an earlier decision filed on July 14, 1978, this Court ruled that the City of Bridgeport's 1975 firefighters exam violated Title VII, 42 U.S.C. § 2000e et seq. Since this ruling the Court has held a hearing, conducted several chambers conferences and requested briefs in an effort to fashion an appropriate remedy.[1] This order details the remedy mandated by Title VII and the body of caselaw that it has generated.
The fashioning of a remedy must begin with the premise that the firefighters exam administered in 1975 did not distinguish qualified from unqualified applicants. As the Court explained in its ruling on liability, the exam was not job-related. Moreover, the testimony of Bridgeport's Fire Chief at the remedy hearing indicated that there might be an inverse correlation between those who passed the exam and those who are most qualified to be firefighters. The Chief stated that the two most important attributes of a firefighter are superior physical ability and intelligence. Yet, the evaluation of firefighter applicants placed little weight on physical ability and weighed negatively high scores on an understanding test. Bridgeport's hiring process in 1975 merely required applicants to complete a pass/fail physical agility test. In addition, the written examination penalized those who indicated that they were "inquiring, curious, analytic, exploring, intellectual, reflective, incisive, investigative, probing, logical, scrutinizing, theoretical, astute, rational [and] inquisitive."[2] Therefore, not only was the written exam not job related, but the City's hiring process did not require successful applicants to demonstrate those attributes which the Fire Chief said were essential for firefighters.
Because of the City's ongoing need for firefighters, eighty-four men who passed the written exam, as well as the agility test and the medical examination, have been hired.[3] As should be apparent from what has already been said, these men have not demonstrated that they are intellectually more qualified to be firefighters than the applicants who failed. Moreover, since testimony at the remedy hearing indicated that these eighty-four men are performing their duties adequately, it is fair to assume that all of the applicants who are able to pass the same agility test and medical examination will be capable of performing at least as well as the eighty-four men already hired.
The following order is directed at remedying the disparate impact of the firefighters exam by placing those frustrated applicants *760 on a parity with the eighty-four men who have been hired. Therefore, it is ORDERED that:

A. OLD EXAM

The test battery given as a written exam in 1975 to firefighter candidates shall never be used again;

B. HIRING

1. The City of Bridgeport shall promptly hire the Blacks and Hispanics who filed applications with the civil service office for the 1975 firefighters exam and who pass both the agility test and the medical examination to be administered by the City. Said agility test and medical examination shall be no more rigorous than the test and examination administered to the eighty-four firefighters already hired.
The agility test and the medical examination shall be given within 120 days of this order and shall be preceded by both published notice and individual written notice to each of those Blacks and Hispanics who filed applications for the 1975 firefighters exam. Notwithstanding the above, the City is not obligated to hire anyone who:
(a) was not eighteen years of age on or before the day of the exam (February 21, 1975);
(b) had not graduated from high school or earned a high school equivalency certification as of the day of the exam;
(c) did not possess a valid motor vehicle license for the State of Connecticut as of the day of the exam;
(d) does not presently possess a valid Connecticut motor vehicle license;
(e) was not a bona fide resident of Bridgeport from March 22, 1974 to March 22, 1975; or
(f) has not been a bona fide resident of Bridgeport for the past year.
2. Thereafter, in making appointments to the rank of Firefighter, the City shall assemble a pool of Black and Hispanic candidates qualified for the position (hereinafter "the minority pool") and shall make appointments and promotions from such pool as follows:
(a) Until the number of minority candidates hired by the Bridgeport Fire Department since 1975 equals the number of White candidates hired since 1975, all current and future vacancies in the rank of Firefighter shall be filled from the minority pool, unless the hiring mandated by paragraph B(1) results in the hiring of minority candidates equal to the number of White candidates hired since 1975;
(b) Thereafter, until the number of minority persons working in the Bridgeport Fire Department at the rank of Firefighter or above equals 125, one half of all vacancies shall be filled from the minority pool. Such vacancies shall be filled by making appointments of candidates from the minority pool alternately with appointments of candidates not from this pool;
(c) Variation from the hiring formulas set forth above will be permitted only upon a showing made to the Court of either unavailability of qualified Black and Hispanic candidates or other good cause.
3. Criteria and procedures to be used in determining qualification for the minority pool and plans for recruiting qualified candidates for the minority pool shall be submitted to the court for review and approval before being used. Exemption from state and local restrictions will be approved where necessary to effectuate this decree.
4. Subsequent appointments to the rank of Firefighter shall be made in strict accordance with Bridgeport's affirmative action plan and Title VII of the Civil Rights Act of 1964.
5. This Court shall retain jurisdiction over this case until the provisions of this order have been complied with, and any entrance criterion to the job of Firefighter which the defendants propose to use together with the use to be made of its results shall, prior to use, be submitted to the Court for review and approval together with satisfactory evidence that *761 the proposed criterion will not result in a disparate impact upon Blacks and Hispanics.

C. SENIORITY

1. Each of the persons hired pursuant to paragraph B(1) shall be granted the same seniority as the twenty-one firefighters appointed on October, 1976.
2. In order to put all of the 1975 firefighter candidates on a parity, the City is prohibited from giving any promotional exams for firefighters until such time as all the firefighters hired pursuant to B(1) shall be qualified to take the promotional exam. Although the Court is specifically declining to alter the three year time-in-grade requirement that now exists for firefighters who wish to take the promotional exam for the positions of Pump Engineer and Lieutenant, the Court is not opposed to a reduction of this requirement. The plausibility of reducing the time-in-grade requirement by establishing an improved training program for all firefighters involves a decision that must be left to the experienced judgment of the authorities in the Fire Department. Until such time as promotional examinations are administered, the City of Bridgeport may fill promotional vacancies on an acting or provisional basis, except that acting or provisional supervisors shall not be given any preference in the selection of permanent supervisors. In selecting acting or provisional supervisors, the City is urged to take cognizance of the prior firefighting experience of a number of the plaintiffs.

D. BACKPAY

Each of the persons hired pursuant to paragraph B(1) is entitled to backpay. For the purposes of this order backpay shall include:
(a) the sum of the value of all regular and overtime wages, fringe benefits, pension benefits, and all other benefits to which firefighters are entitled under applicable union contracts, including all increments, together with interest and "frontpay" for presently qualified candidates until the date of hire;
(b) reduced by the sum of amounts earned or earnable with reasonable diligence and amounts of any welfare or unemployment compensation received.

E. SPECIAL MASTER

The Court has had the good fortune to obtain the assistance of David S. Maclay, Esquire, of Westport, Connecticut, a member of the bar of this Court, as a special master. The special master shall oversee the implementation of this order. It shall be his duty to hear individual claims in order to determine those persons entitled to be hired under paragraph B(1), and to compute the backpay to which these persons are entitled. The special master shall file a final report with this Court and may file such interim reports from time to time as he shall deem advisable. The special master shall be entitled to reasonable compensation for his services.

F. COSTS AND ATTORNEYS' FEES

Plaintiffs are hereby ordered to be entitled to their court costs and reasonable attorneys' fees to date. The amount of such costs and fees shall be set by the court after a hearing, to be held on September 15, 1978. Costs and attorneys' fees for work done in the future shall be fixed in such manner as the Court may determine.

ADDENDUM TO REMEDY ORDER.
The defendant City of Bridgeport has requested a partial clarification of the July 31'st Remedy Order, while that Order requires the City of Bridgeport within 120 days of its effective date to administer agility tests and medical examinations to all members of the class of plaintiffs not excluded by the conditions enumerated in the Order, and within 120 days to hire, in the sense of placing on the payroll, all who pass *762 these tests, the Remedy Order does not require that all these people be placed on duty as firefighters at one time. Rather, the Order contemplated that these people would be placed on actual duty within a reasonable time in accordance with the Department's capacity to train new firefighters.
NOTES
[1] Much to the Court's chagrin, the defendant City of Bridgeport did not submit a brief on the remedy aspect of this case. To a certain extent, the disadvantage at which the Court was put by this failure was offset by the superb brief filed by counsel for plaintiffs.
[2] These are the characteristics that the PRF Understanding Test is designed to identify. As noted in the Court's earlier ruling on liability, the fact that applicants of the same race and of comparable age obtained lower exam scores if they had received some college education may well be the result of the way the PRF Understanding Test scores were weighed.
[3] In 1976 Judge Newman permitted the City to hire forty firefighters, and in 1977 Judge Zampano permitted the hiring of an additional forty-four firefighters.